NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE:  LAWNIE HENDERSON TAYLOR,**
*Appellant*

---

2021-1613

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 14/971,878.

---

Decided:  June 2, 2022

---

LAWNIE H. TAYLOR, Germantown, MD, pro se.

DANIEL KAZHDAN, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Katherine K. Vidal.  Also represented by KAKOLI CAPRIHAN, THOMAS W. KRAUSE, MONICA BARNES LATEEF, ROBERT J. MCMANUS, FARHEENA YASMEEN RASHEED.

---

Before REYNA, MAYER, and CUNNINGHAM, *Circuit Judges.*

PER CURIAM.

Lawnie H. Taylor appeals from the Patent Trial and Appeal Board's decision affirming the examiner's rejection of claims 131–153 of United States Patent Application No. 14/971,878 ("the '878 application").  Because we conclude

that substantial evidence supports the Board's affirmance of the examiner's rejection of all pending claims as anticipated by prior art, we *affirm*.

BACKGROUND

In 2015, Mr. Taylor filed the '878 application, entitled "Cotton-Gentle Hypochlorite Bleach," with the United States Patent and Trademark Office. App. 32, 103. The '878 application is directed to products and methods for removing stains from clothing. *Id.* at 103 (¶ 2), 35–38. Specifically, the '878 application is directed to a bleach composition containing an alkali-metal hypochlorite salt (preferably sodium hypochlorite ("NaOCl")) and an alkali-metal hydroxide (preferably sodium hydroxide ("NaOH")), that is purportedly less damaging than previously known bleach compositions. *Id.* at 104 (¶¶ 6, 7, 9).

Claims 131–153 are currently pending. *Id.* at 35–38. Claims 131–144 are method claims. Claim 131, in its present amended form, is directed to:

A method for prescribing the natural fabric effect quality of a hypochlorite bleach composition, said quality in the range of fabric-damaging to abated-damaging to cotton-safe, said composition in the process of formulation,

wherein the amounts of the essential components of a bleach composition are expressed in a ratio value as wt % alkali-metal hydroxide over wt % alkali-metal hypochloride-salt [sic], or the reciprocal, wherein a selected ratio value defines the desired natural fabric effect quality of the composition (e[.]g., 1:30 – fabric-damaging, 1:2 – cotton-safe, etc.),

wherein a bleach composition so composed and set with a natural fabric effect quality must be characterized by the selected ratio value that defines said fabric effect quality,

wherein said ratio value and the amount of an essential component are expressed as *known* factors of the ratio equation by which the amount of the other essential component is determined and limited,

wherein a bleach composition composed with a prescribed natural fabric effect quality in the range of damaging to abated-damaging to cotton-safe comprises,

(a) an amount of an alkali-metal hypochlorite-salt, as a *known* factor of a ratio equation, said amount effective for cleaning stain from a soft-fabric article,

(b) an amount of an alkali-metal hydroxide as an *unknown* term of the ratio equation, said amount calculated by (a) and (c),

(c) a ratio value, as a *known* factor of the ratio equation, said value selected in the range 1:30 to 1:1, or reciprocal value selected in the range 30:1 to 1.1, to set the prescribed quality of natural fabric effect of the bleach composition in the range of fabric-damaging to abated-damaging to cotton-safe;

wherein the pH of said composition is at least 11.

*Id.* at 35–36 (emphasis in original). Claims 132–144 are dependent claims. *Id.* at 36–37. Claims 145–153 are product claims. Exemplary claim 145 recites:

An aqueous hypochlorite-salt bleach product for cleaning stain from a soft fabric article, the bleach product with two unique features;

(i) a natural fabric safety quality on contacting a soft fabric article, said natural

quality in the range of fabric-damaging to cotton-safe;

(ii) a weight concentration ratio, weight % alkali-metal hydroxide over weight % alkali-metal hypochlorite-salt, or the reciprocal, wherein the selected value of said ratio defines the natural fabric safety quality of the bleach product which can be sorted by the ratio value,

wherein the aqueous bleach product comprises,

(a) a specified amount of an alkali-metal hypochlorite-salt, effective for cleaning stain from a soft-fabric article,

(b) an amount of an alkali-metal hydroxide as determined by (a), (c), and a ratio equation,

(c) a ratio value, said value selected in the range 1:30 to 1:1, or reciprocal value selected in the range 30:1 to 1:1, to set the quality of natural fabric safety of the bleach product in the range of fabric-damaging to cotton-safe;

wherein the pH of said product is at least 11.

*Id.* at 37.  Claims 146–153 are dependent claims.  *Id.* at 37–38.

At issue in this appeal is the "ratio value" recited in all pending claims.  Mr. Taylor claims that the ratio value is a "unique claim feature" distinguishing his claims from the prior art.  Appellant's Opening Br. 10–12.  Examples of the claimed reciprocal ratio value are provided in Table 1 of the '878 application's specification.  App. 116.

Mr. Taylor explains that he conducted an experiment with the seven bleach solutions reported in Table 1 to

determine how long cotton cloths could be submerged in each solution before they degraded enough to be torn by hand. Appellant's Opening Br. 10–11; App. 115–16 (¶ 59). He started with Ultra Clorox Bleach containing 6% by weight NaOCl and less than 0.2% by weight NaOH (a reciprocal ratio value of over 30:1). Appellant's Opening Br. 11; App. 116 (¶ 60). He created the other six bleach solutions by adding NaOH to Ultra Clorox Bleach to yield solutions with reciprocal ratio values of 12:1, 5.5:1, 3:1, 2:1, 1.5:1,[1] and 1:1. Appellant's Opening Br. 11; App. 116 (¶ 60, Table 1). He then recorded the time required for cloths submerged in each solution to degrade to the point where they could be torn by hand. Appellant's Opening Br. 11; App. 115–16 (¶ 59). He found that adding NaOH to achieve a NaOH:NaOCl ratio approaching 2:1 increased the amount of time a cloth could be exposed to the bleach composition before it could be torn. Appellant's Opening Br. 11; App. 116 (¶ 60, Table 1).

The Board decision presently on appeal is its second decision concerning the '878 application. In its first decision, the Board affirmed the examiner's rejection of (1) claims 131–153 as anticipated by United States Patent No. 6,120,555 ("Scialla") under § 102(b)[2], or, in the alternative, as obvious over Scialla under § 103(a), App. 316, 320–23; (2) claims 131–135, 137–149, and 151–153 as

---

[1]    Table 1 reports this ratio value as "1.5:2." App. 116. This appears to be a typographical error.

[2]    35 U.S.C. §§ 102 and 103 were amended in 2011. *See* Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112–29, § 3(b)–(c), 125 Stat. 284, 285–87 (2011). Pre-AIA §§ 102 and 103 apply to the '878 application's claims because they have an effective filing date before March 16, 2013. *See* AIA, 125 Stat. at 293. Throughout this opinion, any reference to § 102 or § 103 refers to the pre-AIA versions of those statutes.

anticipated by United States Patent No. 6,416,687 ("Agostini") under § 102(b), or, in the alternative, as obvious over Agostini under § 103(a), *id.*; (3) claims 131–135, 137–149, and 151–153 as anticipated by United States Patent No. 6,448,215 ("Grande"), or, in the alternative, as obvious over Grande under § 103(a), *id.*; and (4) claims 131–144 as unpatentable under § 101, *id.* at 318–19. The Board reversed the examiner's § 101 rejection as to the product claims, claims 145–153. *Id.* at 319–20. After the Board issued its first decision, Mr. Taylor amended claims 131 and 145 slightly to their currently pending form and requested continued examination. *Id.* at 333–37.

On January 7, 2019, the examiner issued a non-final office action maintaining all rejections as to claims 131–153 that the Board affirmed in its first decision. *Id.* at 339–40. On April 4, 2019, the examiner issued another non-final office action to add an additional ground of rejection of indefiniteness for claims 131–144 under § 112 ¶ 2.[3] *Id.* at 352–61. Mr. Taylor, again, appealed to the Board. *Id.* at 2–25. In the Board's second decision, it affirmed the rejections of claims 131–153 set forth in the January 2019 and April 2019 office actions. *Id.* at 2–25.

Mr. Taylor appeals from the Board's second decision. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

We review the Board's decision under the standards provided in the Administrative Procedure Act ("APA").

---

[3]   As with § 102 and § 103, pre-AIA § 112 applies to the '878 application's claims because they have an effective priority date before September 16, 2012. *See* AIA, 125 Stat. at 297 (making the AIA's changes to § 112 applicable to "any patent application that is filed on or after" September 16, 2012). Throughout this opinion, any reference to § 112 refers to the pre-AIA version of the statute.

5 U.S.C. § 706(2); *In re Bd. of Trustees of the Leland Stanford Junior Univ.*, 991 F.3d 1245, 1249–50 (Fed. Cir. 2021). "Under the APA, we review the Board's legal conclusions de novo and its factual findings for substantial evidence." *Id.* at 1250 (citing *ACCO Brands Corp. v. Fellowes, Inc.*, 813 F.3d 1361, 1365 (Fed. Cir. 2016)).

We find it necessary to address only the Board's affirmance of the examiner's rejection of all pending claims as anticipated by Scialla. Anticipation is a question of fact that we review for substantial evidence. *CRFD Rsch., Inc. v. Matal*, 876 F.3d 1330, 1338 (Fed. Cir. 2017). Because substantial evidence supports the Board's affirmance of all pending claims as anticipated by Scialla, we need not reach the other bases for rejection. *See, e.g.*, *Soft Gel Techs., Inc. v. Jarrow Formulas, Inc.*, 864 F.3d 1334, 1339 n.3 (Fed. Cir. 2017) (declining to address alternative grounds of unpatentability where we uphold one ground of unpatentability).

Mr. Taylor argues that the Board's affirmance of the examiner's rejections of claims 131–153 under § 102 is not supported by substantial evidence. Specifically, he argues that using a NaOH:NaOCl ratio value to formulate a bleach solution was not known in the prior art. Appellant's Opening Br. 9–10, 14–15. He asserts that the prior art disclosed first creating a bleach solution and then calculating a NaOH:NaOCl ratio value after the amounts of NaOH and NaOCl are known. *Id.* at 14–15. He argues that the pending claims, which require adding an amount of NaOH based on a known amount of NaOCl and a selected NaOH:NaOCl ratio in the range of 1:30 to 1:1 are, therefore, distinguishable from the prior art. *Id.* Mr. Taylor asserts that the examiner and the Board both ignored the differences between the prior art's *calculated* ratio—which he asserts is calculated after the bleach solution has been made—and the claimed *selected* ratio—which is selected from the empirically derived ratios of Table 1 in the range of 1:30 to 1:1. *Id.* We disagree.

Scialla teaches bleach compositions with three essential components: (1) an alkali metal hypochlorite, preferably NaOCl; (2) a pH buffering means, preferably an alkali metal salt of metaborate such as sodium metaborate ($NaBO_2$), and (3) a strong source of alkalinity, such as alkali metal hydroxides (e.g., NaOH). App. 448–49 (col. 3 ll. 53–58; col. 3 l. 66 – col. 4 l. 7; col. 4 ll. 19–24; col. 5 ll. 33–48). One of Scialla's objects is "to provide a hypochlorite-containing composition, suitable for use in laundry application, whereby fabric safety is improved." *Id.* at 447 (col. 1 ll. 23–26). Scialla provides seven bleach compositions illustrative of its claimed invention, all of which provide improved fabric safety or improved whiteness of stained fabrics as compared to bleach compositions without the claimed pH buffering means:

| Compositions (weight %) | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|
| Sodium hypochlorite | 5.0 | 5.0 | 5.0 | 2.5 | 2.5 | 5.0 | 5.0 |
| Sodium hydroxide | 0.7 | 0.7 | 1.4 | 0.7 | 1.4 | 0.7 | 1.4 |
| Sodium carbonate | 1.0 | — | 1.2 | 1.0 | 1.2 | 1.2 | 1.2 |
| Sodium silicate | — | — | — | — | — | 0.2 | — |
| Sodium metaborate | 1.0 | 1.0 | 1.0 | 0.75 | 1.0 | 0.75 | 0.5 |
| Water | | | | 100% | | | |

*Id.* at 450.

Substantial evidence supports the finding that Scialla teaches all elements of the pending product claims, claims 145–153. Scialla teaches a composition with a NaOH:NaOCl ratio value in the range of 1:30 to 1:1 through its disclosure of compositions having ratios of 1:7.14 (e.g., 0.7 weight percent NaOH and 5.0 weight percent NaOCl) and other ratio values within the claimed range. *See id.* Scialla teaches that its disclosed compositions have the claimed property of "a natural fabric safety quality on contacting a soft fabric article, said natural quality in the range of fabric-damaging to cotton-safe," *id.* at 37 (claim 145), because it teaches that its compositions

"provide outstanding fabric whitening action and/or fabric safety properties without compromising on the stain removal performance on different types of stains." *See id.* at 447 (col. 1 ll. 55–60). And Scialla teaches the limitation of the "pH of said product is at least 11," *id.* at 37 (claim 145), because it teaches compositions with a pH in the range of 8 to 14. *See id.* at 449 (col. 5 ll. 33–34); *see also Genentech, Inc. v. Hospira, Inc.*, 946 F.3d 1333, 1338 (Fed. Cir. 2020) ("A prior art reference that discloses an overlapping but different range than the claimed range can be anticipatory, even where the prior art range only partially or slightly overlaps with the claimed range.").

Mr. Taylor's argument that his pending claims are distinguishable from Scialla because they require calculating the amount of NaOH from a selected ratio is unavailing. Whether a bleach product is created by adding, for example, 7.14 times as much NaOCl as NaOH—as is required by the '878 patent application to make a bleach composition within the claimed ranges of 1:30 to 1:1, such as a 1:7.14 NaOH:NaOCl ratio—or is created by adding 5.0 weight percent NaOCl and 0.7 weight percent NaOH—as is disclosed by Scialla—is a distinction without a difference. *See, e.g.*, App. 37 (claim 145); App. 450 (col. 8 ll. 15–25). The resulting products are the same. Thus, Mr. Taylor has not shown that the Board erred in affirming the examiner's rejection of the product claims, claims 145–153, over Scialla.

For the same reasons, substantial evidence supports the Board's affirmance of the examiner's rejection of the method claims, claims 131–144, as anticipated by Scialla. The method claims of the '878 application are directed to a "method for prescribing the natural fabric effect quality of a hypochlorite bleach composition" where "the amounts of the essential components of a bleach composition are expressed in a ratio value." *Id.* at 35 (claim 131). As we have already explained, Scialla's expression of the amounts of essential components NaOCl and NaOH as weight percentages rather than as a ratio of weight percentages is a

distinction without a difference.  And, just as Mr. Taylor did, the Scialla inventors performed an experiment with various weight percentages of NaOH and tested the fabric safety of the resulting compositions—thus permitting them to "prescribe[e] the natural fabric effect quality" of the compositions.  *See id.*; *id.* at 450 (col. 8 ll. 12–29).

## CONCLUSION

We have considered Mr. Taylor's other arguments and do not find them persuasive.  For the foregoing reasons, we *affirm*.

## **AFFIRMED**

### COSTS

No costs.